## AFFIDAVIT FOR SEARCH & SEIZURE WARRANT

### THE STATE OF TEXAS

### COUNTY OF GALVESTON

The undersigned Affiant, Sergeant M. Stephenson, is a Peace Officer in the State of Texas, is employed by the Galveston County Sheriff's Office, and assigned to the Major Crimes Unit, of the Criminal Investigation Division. Affiant is currently designated as a supervisor for Detective(s), assigned to the Major Crimes Unit, and is hereafter referred to as Affiant. Affiant has held a peace officer certification for approximately 12 years and currently holds a Master Peace Officer Certification. Affiant has received training for, and or charged as the lead Detective, for various criminal investigations, to include, but not limited to; Theft, Burglary, Engaging in Organized Criminal Activity, Money Laundering, Aggravated Robbery, Aggravated Assault, Aggravated Kidnapping, Sexual Assault, Aggravated Sexual Assault and Murder. Your Affiant has initiated and successfully completed investigations, resulting in the seizures of contraband, real property and currency, relating to the arrest and convictions of numerous defendants. Affiant's duties include the investigation of criminal offenses to include Engaging in Organized Criminal Activity; to include Gambling Promotion and Money Laundering.

1. **THERE IS IN GALVESTON, GALVESTON COUNTY, TEXAS, A SUSPECTED PLACE AND PREMISES DESCRIBED AND LOCATED AS FOLLOWS:**

**Prosperity Bank,** located at **8300 Highway 6, Hitchcock, Galveston County, Texas, 77563,** and are bank accounts for the following account holders and account numbers:

- City of Hitchcock General Fund:3264101

City of Hitchcock is the controlling party of the above account(s) that transfer and receive funds between accounts and from other accounts that contain illegal funds in the amount of $859,050.00.

The business known as Prosperity Bank, located at 8300 Highway 6, Hitchcock, Galveston County, Texas, 77563, a multi-story, brown in color, brick construction commercial business. The front doors of the business face to the southwest and above the front doors, are permanently affixed signage, "Prosperity Bank," directly onto the building with large blue font. The front entrance is comprised of glass doors, and the front of the business is constructed with large glass windows. The business is located on the north side of State Highway 6. Depicted below, is an image of Prosperity Bank, located at 8300 Highway 6, Hitchcock, Galveston County, Texas, 77563, captured by Affiant:



1

The above listed bank accounts are in the care, custody, and control of Prosperity Bank for The City of Hitchcock and any person(s) whose name, identities, and physical description are unknown to Affiant. Affiant believes The City of Hitchcock is in possession of illegal funds procured through organized crime, illegal gambling, and money laundering.

2. **ITEMS AUTHORIZED FOR SEARCH AND SEIZURE PURSUANT TO THIS WARRANT INCLUDE:** "The City of Hitchcock" and any other person any person(s) whose name, identities, and physical description are unknown to Affiant, that govern or operate the below listed account number at **Prosperity Bank General Fund:3264101,** located at **8300 Highway 6, Hitchcock, Galveston County, Texas, 77563.**

   a) Pursuant to Texas Code of Criminal Procedure Article 59.12, the regulated financial institution upon which this warrant is served may either:

      1. Pay an account, or tender assets held, as security for an obligation owed to the institution at the time of the service of the seizure warrant by The City of Hitchcock is the controlling party of the above bank account(s) that contain illegal currency, and said the currency, shall be seized pursuant to Article 59.12; in the amount of $859,050.00, payable to: **KENNETH CUSICK, GALVESTON COUNTY CRIMINAL DISTRICT ATTORNEY**; or

      2. Transfer the depository account or assets to a segregated interest-bearing account in the name of **KENNETH CUSICK, GALVESTON COUNTY CRIMINAL DISTRICT ATTORNEY, GALVESTON COUNTY, AS TRUSTEE,** to remain in the account until the time has expired for an appeal from a decision of the court relating to the forfeiture of accounts or assets under Article 59.05 of the Texas Code of Criminal Procedure.

   Your Affiant asks for US Currency in the amount of $859,050.00, used in, intended to be used in, is illegal proceeds of, was acquired with illegal proceeds of engaging in organized criminal activity, money laundering, the possession of which is prohibited by law, namely money that is subject to forfeiture under Chapter 59 of the Texas Code of Criminal Procedure.

3. **SAID SUSPECTED PLACE AND PREMISES ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS:**

   Unknown Branch Supervisor or Manager of Prosperity Bank, listed in paragraph 1.

4. **IT IS THE BELIEF OF AFFIANT, AND HE HEREBY CHARGES AND ACCUSES THAT:**

**The City of Hitchcock and/or Agents of The City of Hitchcock,** did then and there, commit the following violations of Texas Law:

   1. **MONEY LAUNDERING,** in violation of Texas Penal Code Chapter 34, in that as the person/entity, who owns the bank accounts registered to, "The City of Hitchcock," knowingly acquired, maintained an interest in, concealed, possessed, transferred, or transported the proceeds of criminal activity, namely, illegal gambling, and/or engaging in organized criminal activity.

2

2. **MONEY LAUNDERING,** in violation of the Texas Penal Code Chapter 34.02, in that as the person/entity, who owns the bank accounts registered to, "The City of Hitchcock," concealed, possessed and transferred proceeds of criminal activity, to wit; the person/entity knowingly:

   a) Acquires or maintains an interest in, conceals, possesses, transfers, or transports the proceeds of criminal activity;
   b) conducts, supervises, or facilitates a transaction involving the proceeds of criminal activity;
   c) invests, expends, or receives, or offers to invest, expend, or receive, the proceeds of criminal activity or funds that the person believes are the proceeds of criminal activity; or
   d) finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity.

3. **GAMBLING PROMOTION,** in violation of Texas Penal Code Chapter 47.03, in that as a person/entity commits an offense if the person/entity intentionally or knowingly does any of the following acts:

   a) Operates or participates in the earnings of a gambling place;
   b) Engages in bookmaking;

4. **POSSESSION OF GAMBLING DEVICE, EQUIPMENT, OR PARAPHERNALIA,** in violation of Texas Penal Code Chapter 47, in that as the person/entity who operated the Hitchcock Game Rooms defined below, to wit;

   a) With the intent to further gambling, knowingly owns, manufactures, transfers, or possess any gambling device that he knows is designed for gambling purposes or any equipment that he knows is designed as a subassembly or essential part of a gambling device.
   b) With the intent to further gambling, knowingly owns, manufactures, transfers commercially, or possesses any altered gambling equipment that he knows is designed for gambling purposes or any equipment that he knows is designed as a subassembly or essential part of such device.
   c) With the intent to further gambling, the person knowingly owns, manufactures, transfers commercially, or possesses gambling paraphernalia.

5. **KEEPING A GAMBLING PLACE,** in violation of Texas Penal Code Chapter 47, in that as the person/entity, knowingly uses or permits another to use as a gambling place any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by the person/entity or under the person/entity's control, or rents or lets any such property with a view or expectation that it be so used.

6. **ENGAGED IN ORGANIZED CRIMINAL ACTIVITY,** in violation of Texas Penal Code Chapter 71.02, in that person/entity The City of Hitchcock do so with the intent to establish, maintain, or participate in a combination or in the profits of a combination consisting of the City of Hitchcock and other persons owning and operating the Hitchcock Game Rooms, who collaborated in carrying on a criminal activity, intentionally and knowingly commit the offenses of Keeping a Gambling Place and/or Gambling Promotion and/or Possession of Gambling Device and/or Paraphernalia and/or any gambling offense punishable as a Class A misdemeanor.

5. **AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING FACTS:**

3

Affiant learned from members of the Galveston County Organized Crime Task Force and Detective B. Pearcy, that in the month of February 2026, Galveston County Organized Crime Task Force, and Detective B. Pearcy, received a tip regarding a large quantity of illegal game rooms containing 8-liner machines, and said game rooms were paying out monies to patrons/customers, within the city of Hitchcock. Affiant learned from Detective B. Pearcy that in the month of February 2026, Galveston County Organized Crime Task Force, and Detective B. Pearcy, conducted a proactive search for illegal Game Rooms operating illegally in the City of Hitchcock, within Galveston County.

Given Affiants experience, Affiant is aware these devices are known as electronic slot machines, multi or 8-liners, a specialty gambling device, or any facsimiles thereof. Affiant is aware these devices are activated by placing US currency, or the equivalent, in the devices, receiving credits as to the amount of US currency or equivalent put into the device, placing a bet, and pushing the start button. Affiant is aware various icons, arranged in a row are brought into apparent motion. Affiant is aware the player accumulates credits that are exchanged for cash money only or other prizes prohibited by law.

Affiant knows 8-liners themselves constitute a lottery, having consideration, chance, and prize. Affiant knows Gambling Device as described by Texas Penal Sec. 47.01. to be: any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.  The term Gambling Device:

(A) includes, but is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits; and

(B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

Affiant learned from Detective B. Pearcy, that in the month of February 2026, Detective B. Pearcy contacted the Galveston County Tax Office, via telephone. Affiant learned from Detective B. Pearcy that he spoke with Brenda Starkey, a representative of the Galveston County Tax Assessor, and learned from Brenda Starkey that the Galveston County Tax Assessor keeps a spreadsheet containing all registered/stickered Coin Operated machines located within Galveston County, pursuant to Occupations Code Chapter Sec. 2153.151. License or Registration Required. Affiant learned from Detective B. Pearcy that Brenda Starkey, advised him, that she provided Detective T. Trochesset, with an email of a spread sheet, containing all registered/stickered Coin Operated machines, located within Galveston County, pursuant to Occupations Code Chapter Sec. 2153.151. License or Registration Required.

Affiant learned from Detective B. Pearcy that he acquired from, Detective T. Trochesset, the emailed spreadsheet from Brenda Starkey, and Detective B. Pearcy observed the spreadsheet to contain information pertaining to businesses in the City of Hitchcock that operate coin operated machines, information including Sticker Numbers, Amount Paid, Dept #, Date, Amount, Bill to Location, Phone, and Email. Affiant learned from Detective B.

4

Pearcy that the Tax Assessor requires business owners to pay a permit fee to operate each one of these types of machines, and these coin operated machines could be anything from soda machines to crane machines that are operated by putting US Currency into the machine.

Affiant knows through review of Hitchcock City Ordinances; the City of Hitchcock requires registration of all video gaming devices. Affiant knows the City of Hitchcock defines a Video Gaming Device as having the same meaning as "video draw poker devices."

Affiant learned from Detective B. Pearcy that he, along with members of the Galveston County Organized Crime Task Force, have observed, either directly, indirectly or by use of other lawful investigative tactics, machines described as video gaming devices under the Texas Penal Code definition, otherwise known as 8-liners/video draw poker devices, at the following locations within the City of Hitchcock, Galveston County, Texas, hereafter referred to as "Hitchcock Game Rooms":

1. 6121 HWY 6, Hitchcock, Galveston County, TX – Numbers
2. 7202 HWY 6, Hitchcock, Galveston County, TX – Wild 7's
3. 7902 HWY 6, Hitchcock, Galveston County, TX - Gold Rush
4. 8219 Wallis Ave, Hitchcock, Galveston County, TX - Jokers Gone Wild Again
5. 8425 HWY 6, Hitchcock, Galveston County, TX - Mardi Gras
6. 8513 HWY 6, Hitchcock, Galveston County, TX - Spooky Spins
7. 8709 HWY 6, Hitchcock, Galveston County, TX - Jungle Room
8. 7515 FM 2004, Hitchcock, Galveston County, TX – Doublewide
9. 9110 HWY 6, Hitchcock, Galveston County, TX - Purple Room
10. 10135 HWY 6, Hitchcock, Galveston County, TX Unit B – Leprechaun
11. 11035 HWY 6, Santa Fe, Galveston County, TX - Blue Cover Room
12. 7127 HWY 6, Hitchcock, Galveston County, TX - Sami's Mart
13. 7425 HWY 6, Hitchcock, Galveston County, TX - Smiley's MM
14. 7727 HWY 6, Hitchcock, Galveston County, TX - Prime Mart
15. 7801 HWY 6, Hitchcock, Galveston County, TX - M&M C Store
16. 7802 HWY 6, Hitchcock, Galveston County, TX - 4VU Grocery
17. 8227 HWY 6, Hitchcock, Galveston County, TX – Roadway
18. 8813 HWY 6, Hitchcock, Galveston County, TX - AYMAN Food Store
19. 5606 FM 2004, Hitchcock, Galveston County, TX - Hitchcock Post
20. 3739 Main St, Hitchcock, Galveston County, TX – Comfort Zone Washateria

Affiant observed on the City of Hitchcock's web page, the City of Hitchcock also maintains records of video gaming devices and the City's policy regarding the operation of the video gaming devices, this Ordinance can be viewed at: "https://library.municode.com/tx/hitchcock/ordinances/code_of_ordinances" located under "Hitchcock Amusement Ordinance", the relevant sections are attached as ATTACHMENT A and are incorporated by reference.

Affiant learned from Detective B. Pearcy and members of the Galveston County Organized Crime Task Force that in the month of February 2026, on at least one occasion and within 72 hours from the date of February 18, 2026, they conducted surveillance on the "Hitchcock Game Rooms," and did not observe change to customer traffic, indicating no change in the operational patterns.

Affiant knows through his observations, as well as information provided to Affiant by Detective Pearcy, that undercover operations were conducted at "Hitchcock Game Rooms," by members of the Galveston County Organized Crime Task Force, and Detective B. Pearcy, and these video gaming device establishments in the City of Hitchcock, were observed to contain 8-liners/video draw poker devices machines, that displayed Galveston County Tax Coin operated machine stickers, and Hitchcock device operation permits.

Affiant knows if device permits were issued by the City of Hitchcock, the City of Hitchcock has in its possession records of payment, applications, licensees, inspections of facilities, inspections of records, inspections of devices, background investigations, and any other documentation not listed, related to the City of Hitchcock's Video Gaming Devices Ordinance, Title XI, Chapter 112 (Hitchcock Amusement Ordinance), herein referred to as "Hitchcock Amusement Ordinance".

Affiant knows trough training and experience, conducting investigations will yield evidence of violations, records of inspection, photographs/video/recordings, and records of reports completed. Affiant knows after review of the City of Hitchcock's Video Gaming Devices Ordinance, "Hitchcock Amusement Ordinance," the City of Hitchcock will have in its possession records of inspection collected by an agent of the City of Hitchcock.

Affiant learned from Detective B. Pearcy that the City of Hitchcock issues permit to licensees and their establishments for Video Gaming Devices, which has the same meaning as 8-liners/video draw poker devices, that are considered Gambling devices, as described by Texas Penal Code Sec. 47.01, and Detective B. Pearcy believes Hitchcock City Hall, 8102 Highway 6, Hitchcock, Galveston County, Texas, 77563, is storing, and recording, evidence of illegal game rooms, by issuing permits and licenses for 8-liners/video draw poker device machines.

Affiant believes relevant case law supports, 8-liners/video draw poker device machines themselves are illegal lotteries based on their scheme with three essential elements:

1. Consideration (Payment thereof): meaning players (customers) must pay money or insert credits to activate the machine. These machines are pay to play akin to purchasing a chance in lottery.
2. Chance (Element thereof): meaning the outcome of each play is determined predominantly by random chance rather than skill, with the machine utilizing computer software to generate specific randomness results. Wins from 8 liner machines depend on random draws not player control.
3. Prize (Opportunity to Win): Meaning 8-liners/video draw poker devices successful plays award prizes, such as credits, tickets, or items of value.

Based on 8-liners/video draw poker device machines containing all three, Consideration, Chance, and Prize, they are lotteries, therefore an illegal gambling device as described by Texas Penal Code Sec. 47.01 and considered unlawful in Texas Penal Code Sec. 47.06. Possession of Gambling Device, Equipment, or Paraphernalia.

Based on the information Affiant learned from Detective B. Pearcy, and given Affiant's knowledge into illegal gambling offenses, your Affiant would state that 8-liners/video draw poker devices, and gambling devices, are located and operated for play by customers at "Hitchcock Game Rooms."

Affiant believes sufficient probable cause exists, based on information from Detective B. Pearcy, that The City of Hitchcock, retains records of payment, applications, licensees, inspections of facilities, inspections of records, inspections of devices, background investigations, and any other documentation not listed, related to the "Hitchcock Amusement Ordinance" and "Hitchcock Game Rooms," at Hitchcock City Hall, 8102 Highway 6, Hitchcock, Galveston County, Texas, 77563.

On February 18, 2026, Affiant executed a search warrant at Hitchcock City Hall, 8102 Highway 6, Hitchcock, Galveston County, Texas, in relation to the retention and preservation of evidence, pertaining to multiple criminal investigations into illegal gambling of the "Hitchcock Game Rooms" conducted by members of the Galveston County Organized Crime Task Force. Affiant spoke with several agents of the City of Hitchcock.

Affiant first spoke with City of Hitchcock City Manager M. Gelles ("Gelles"). Gelles advised Affiant, her primary role is implementing City of Hitchcock policies set by City Council, maintaining and developing City of Hitchcock budget, and establishing an agenda, to be heard by members of City Council. Gelles advised Affiant, Amusement Permit fees, specifically relating to "Game Rooms," or "Video Gaming Industry Establishments," are a large source of revenue for the City of Hitchcock. Gelles advised Affiant, fees acquired from Amusement licensing and permitting, under "Hitchcock Amusement Ordinance" ($5,000 for license establishment; $1,300 per machine, etc. per year) by the City of Hitchcock, are collected by City employees at Hitchcock City Hall, and deposited into the City of Hitchcock general fund:3264101 at Prosperity Bank. Affiant learned from Gelles that the City of Hitchcock operates on a, "pool cash system." Affiant concluded that a "pool cash system" based on this statement from Gelles, is all revenue, or monies taken by the City of Hitchcock, from multiple sources, for the fiscal year (October to October) and that are deposited into the City of Hitchcock General Fund, to include revenue, or monies acquired relating to "Hitchcock Game Rooms."

Affiant learned from the Gelles that the Game Room fees collected fund the City of Hitchcock operations and are budgeted each year by City Council. Affiant learned from M. Gelles that the City's fiscal year runs October to the next October, so in February 2026 the current City's fiscal year started in October 2025 and runs until October 2026. Gelles stated to Affiant, the Game Room license fees are due each October of the fiscal year. Gelles advised Affiant, she is not aware of how many "Game Rooms," or, "Video Gaming Industry Establishments," were operating in the City of Hitchcock presently.

Gelles advised Affiant, any fees, or revenue, acquired by the City of Hitchcock, at Hitchcock City Hall, 8102 Highway 6, Hitchcock, Galveston County, Texas, 77563, in relation to Amusement licensing and permitting, under "Hitchcock Amusement Ordinance", are deposited to City of Hitchcock primary financial institution, Prosperity Bank, located at 8330 Highway 6, Hitchcock, Galveston County, Texas, 77563.

Gelles provided Affiant with a printed spreadsheet of the City of Hitchcock budget under the name "Amusement Permit (Game Room & Machine Fees), G/L Account:101-4-002010" hereafter referred to as "Amusement Permit Annual Spreadsheet." Gelles advised Affiant the Amusement Permit Annual Spreadsheet documented net revenue taken by the City of Hitchcock from Game Room licensing fees from 2009 to present along the projected net revenue for fiscal year 2019-2026, pertaining to "Game Rooms," or, "Video Gaming Industry Establishments," under the governing body for the City of Hitchcock.

7

Depicted in the image below, is the printed "Amusement Permit Annual Spreadsheet," provided to Affiant, by Gelles, City of Hitchcock "ATTACHMENT B":

## "ATTACHMENT B"

**Name:** Amusement Permit (Game Room & Machine Fees)    30.00
G/L Account: 101-4-0002010

| Fiscal Year | Amount | % change from Previous FY | Reasons for Change |
|---|---|---|---|
| 2009 | 73,376 | | |
| 2010 | 53,837 | -26.63% | |
| 2011 | 85,211 | 58.27% | |
| 2012 | 176,135 | 106.70% | |
| 2013 | 257,700 | 46.31% | |
| 2014 | 332,670 | 29.09% | |
| 2015 | 317,665 | -4.51% | |
| 2016 | 402,885 | 26.83% | |
| 2017 | 292,075 | -27.50% | |
| 2018 | 433,240 | 48.33% | |
| 2019 | 1,079,668 | 149.21% | |
| 2020 | 960,270 | -11.06% | |
| 2021 | 934,230 | -2.71% | |
| 2022 | 920,035 | -1.52% | |
| 2023 | 832,950 | -9.47% | Reduction in the number of Game Room Machines permitted due to Sheriff's raids |
| 2024 | 850,135 | 2.06% | |
| 2025 | 805,515 | -5.25% | Reduction in the number of Game Room Machines permitted due to raids |
| 2026 EST | 780,965 | -3.05% | Reduction in the number of Game Room Machines permitted. |

| Fiscal Year | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Totals | Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2009 | 4,400.00 | 5,900.00 | 8,800.00 | 1,500.00 | 11,300.00 | 4,300.00 | 6,200.00 | - | 10,400.00 | 4,300.00 | 4,100.00 | 12,175.54 | 73,375.54 | |
| 2010 | 8,000.00 | 17,900.00 | 9,337.38 | - | 500.00 | - | 6,600.00 | - | 2,400.00 | 6,500.00 | - | 2,600.00 | 53,837.38 | |
| 2011 | 5,500.00 | 32,700.00 | 15,552.00 | 500.00 | 14,552.35 | 385.00 | 5,100.00 | 865.02 | 5,043.00 | 500.00 | 100.00 | 4,433.60 | 85,210.97 | |
| 2012 | 92,700.00 | 5,500.00 | 21,100.00 | 12,200.00 | 13,405.00 | 1,240.00 | 760.00 | 915.00 | 7,800.00 | 8,900.00 | 13,300.00 | 315.00 | 176,135.00 | |
| 2013 | 185,050.00 | 21,455.00 | 390.00 | 17,845.00 | 26,800.00 | 200.00 | 3,600.00 | - | 1,260.00 | 800.00 | - | 300.00 | 257,700.00 | |
| 2014 | 225,050.00 | 57,800.00 | 3,820.00 | 335.00 | 290.00 | 24,175.00 | 19,600.00 | 500.00 | 200.00 | 200.00 | 600.00 | 100.00 | 332,670.00 | |
| 2015 | 205,500.00 | 22,325.00 | 500.00 | - | 29,765.00 | 5,900.00 | 41,800.00 | 560.00 | 745.00 | 1,800.00 | 8,420.00 | 350.00 | 317,665.00 | |
| 2016 | 243,600.00 | 24,475.00 | 1,260.00 | 31,235.00 | 45,605.00 | 69,600.00 | 1,100.00 | (17,020.00) | 1,000.00 | 100.00 | 2,400.00 | 230.00 | 402,885.00 | |
| 2017 | 283,900.00 | 1,010.00 | 855.00 | 735.00 | 375.00 | 600.00 | 3,300.00 | 300.00 | 600.00 | 300.00 | 100.00 | - | 292,075.00 | |
| 2018 | 311,575.00 | 1,060.00 | 75.00 | 6,885.00 | 3,445.00 | 36,400.00 | 1,800.00 | 17,800.00 | 27,500.00 | 26,500.00 | 200.00 | - | 433,240.00 | |
| 2019 | 731,660.00 | 25,663.00 | 18,440.00 | 12,385.00 | 13,300.00 | 159,760.00 | 8,600.00 | 104,260.00 | 1,700.00 | 300.00 | 200.00 | 3,400.00 | 1,079,668.00 | 951,270 |
| 2020 | 743,745.00 | 89,590.00 | 460.00 | 300.00 | 116,800.00 | 300.00 | 75.00 | 100.00 | 100.00 | 1,600.00 | 200.00 | 7,000.00 | 960,270.00 | 927,630 |
| 2021 | 921,445.00 | 3,900.00 | 75.00 | 400.00 | 500.00 | 200.00 | 275.00 | 635.00 | 200.00 | 100.00 | 200.00 | 6,300.00 | 934,230.00 | 914,533 |
| 2022 | 900,450.00 | 2,775.00 | 6,100.00 | 2,855.00 | 100.00 | 680.00 | 90.00 | 645.00 | 460.00 | 300.00 | - | 5,600.00 | 920,035.00 | 837,629 |
| 2023 | 606,250.00 | 44,450.00 | 425.00 | 66,800.00 | 31,875.00 | 72,450.00 | 5,600.00 | 700.00 | 700.00 | 700.00 | 700.00 | 2,300.00 | 832,950.00 | 847,630 |
| 2024 | 790,900.00 | 49,750.00 | 210.00 | 545.00 | 710.00 | 900.00 | 105.00 | 310.00 | 500.00 | 200.00 | 300 | 5,705.00 | 850,135.00 | 807,420 |
| 2025 | 530,300.00 | 213,905.00 | 6,599.97 | 48,194.97 | - | 600 | 305 | 205 | 405 | 400 | 0 | 4,600.00 | 805,514.94 | 807,420 |
| 2026 EST | 709,500.00 | 12,930.00 | 57,715.00 | 715.00 | 105.00 | | | | | | | | 780,965.00 | |

Affiant observed in "ATTACHMENT B" a projected decrease in revenue each fiscal year given with a notation of "Reduction in the number of Game Room Machines permitted due to Sheriff's raids." This observation by Affiant, would suggest that agents of the City of Hitchcock and Gelles displayed knowledge of "Hitchcock Game Rooms" or "Video Gaming Industry Establishments" to be operating illegally under Texas Penal Code Chapter 47 (Keeping a Gambling Place, Possession of Gambling Device, Equipment, or Paraphernalia, and Gambling Promotion); therefore, the City of Hitchcock was unlawfully facilitating and profiting from the Hitchcock Game Rooms illegal gambling by continuing to collect license and machine fees to permit the game rooms to continue to operate from October 2022 to present. Based on Affiant's observations of Attachment B, City of Hitchcock had knowledge over the past several years that in 2023 & 2025, the City of Hitchcock had a reduction in number of machines due to Sheriff's raids.

Gelles advised Affiant, the agent of the City of Hitchcock charged with retention and documentation of all documents relating to Amusement licensing and permitting, under "Hitchcock Amusement Ordinance," was Stacy Baker ("Baker"). Gelles advised Affiant there is limited oversight on the operation and ordinance code compliance of "Hitchcock Game Rooms," given the administration is "understaffed." Gelles advised Affiant that permit and ordinance inspections for "Hitchcock Game Rooms" are conducted in the month of October, every calendar year, but are scheduled by City of Hitchcock Code Enforcement. Gelles advised Affiant that "Hitchcock Game Rooms"

are not inspected again until the following October of every calendar year, unless a fire and life violation is observed or reported. Gelles advised Affiant, the City of Hitchcock Fire Marshal is tasked to enforce fire and life inspections, and not ordinance code compliance pertaining to "Hitchcock Amusement Ordinance." Gelles acknowledged to Affiant that gambling, or keeping a gambling place, was illegal in the State of Texas and Gelles stated," I have an ordinance and I have to follow it." Affiant also knows from the City's Ordinance that the City had the ability to inspect the "Hitchcock Game Rooms" for criminal activity, and failed to take any action under their Ordinance to stop the "Hitchcock Game Rooms" from illegally gambling.

Affiant spoke with Baker, and Baker advised Affiant, all documentation relating to Amusement licensing and permitting, under "Hitchcock Amusement Ordinance," were either stored on the City of Hitchcock, electronic i-Worqs server or physical documents stored at Hitchcock City Hall. Baker advised Affiant that Baker only had physical documentation from February 2026 to the approximate year of 2021. Baker has been employed as the City of Hitchcock Community Development Specialist and Code Enforcement Officer since 2022. Baker advised Affiant her duties include maintaining documents provided by the Hitchcock Game Rooms, inspections of the Hitchcock Game Rooms, and enforcing all City Ordinances. Affiant learned from Baker that during her employment with the City of Hitchcock, she would accompany City of Hitchcock Fire Marshal Darron Ray, on Fire and Life Inspections at the Hitchcock Game Rooms, once a year beginning in October during the daytime hours. Baker informed Affiant that her inspections of Hitchcock Game Rooms are generally dependent on the schedule of City of Hitchcock Fire Marshal Darron Ray, and she was never informed by her supervisors to enforce the municipal code for Game Room operations. Affiant learned from Baker during her interview that the Hitchcock Police Department does not enforce the City of Hitchcock Amusement Ordinance as it pertains to Hitchcock Game Room operations. Affiant learned from Baker that she has always been directed by her supervisors at the City of Hitchcock to "take the money, do the permit and give stickers." Affiant asked Baker if several of the Game Rooms could have been closed for illegal operation several months ago and she replied "sure." Affiant questioned Baker regarding the permitting/stickering process, and she advised Wild 7's Game Room/Spooky Spins has not submitted a renewal form and are delinquent on payment. Affiant learned from Detective B. Pearcy that prior to, and during Affiant's interview with Baker, Wild 7's Game Room was in full operation and not given any notice by any Agent of The City of Hitchcock, to cease operations until outstanding fees were paid, or issuance of new validation decals by Baker.

Baker advised Affiant she could not provide Affiant with any substantial information on the last "Hitchcock Game Room" found in violation of an ordinance under "Hitchcock Amusement Ordinance", since the beginning of Baker's employment in 2022, and or any Hitchcock Game Room currently under investigation for any violation of ordinance under "Hitchcock Amusement Ordinance."

Baker affirmed to Affiant that the application renewal fee per Hitchcock Game Room is five thousand dollars ($5,000), and one thousand three hundred dollars ($1,300) for renewal of a validation decal per machine, operated in that respective Hitchcock Game Room. Baker advised Affiant that Baker does not physically affix the validation decal to each machine, but Baker issues the validation decal to the applicant of the Hitchcock Game Room at Hitchcock City Hall.

Baker advised Affiant that the following Game Room locations paid license and machine fees in October 2025-present:
- 6121 HWY 6, Hitchcock, Galveston County, TX – Numbers
- 7202 HWY 6, Hitchcock, Galveston County, TX – Wild 7's
- 7902 HWY 6, Hitchcock, Galveston County, TX - Gold Rush
- 8219 Wallis Ave, Hitchcock, Galveston County, TX - Jokers Gone Wild Again
- 8425 HWY 6, Hitchcock, Galveston County, TX - Mardi Gras/Jubilee
- 8513 HWY 6, Hitchcock, Galveston County, TX - Spooky Spins
- 8709 HWY 6, Hitchcock, Galveston County, TX - Jungle Room

9

- 7515 FM 2004, Hitchcock, Galveston County, TX – Doublewide
- 9110 HWY 6, Hitchcock, Galveston County, TX - Purple Room
- 10135 HWY 6, Hitchcock, Galveston County, TX Unit B – Leprechaun
- 11035 HWY 6, Santa Fe, Galveston County, TX - Blue Cover Room
- 7127 HWY 6, Hitchcock, Galveston County, TX - Sami's Mart
- 7425 HWY 6, Hitchcock, Galveston County, TX - Smiley's MM
- 7727 HWY 6, Hitchcock, Galveston County, TX - Prime Mart
- 7801 HWY 6, Hitchcock, Galveston County, TX - M&M C Store
- 7802 HWY 6, Hitchcock, Galveston County, TX - 4VU Grocery
- 8227 HWY 6, Hitchcock, Galveston County, TX – Roadway
- 8813 HWY 6, Hitchcock, Galveston County, TX - AYMAN Food Store
- 5606 FM 2004, Hitchcock, Galveston County, TX - Hitchcock Post
- 3739 Main St, Hitchcock, Galveston County, TX – Comfort Zone Washateria

Affiant learned from the interview that Baker was charged with the compliance, documentation, and retention, of all "Game Rooms", or," Video Gaming Industry Establishments," or," Businesses with five machines or less," governed under Amusement licensing and permitting, under "Hitchcock Amusement Ordinance" for the City of Hitchcock. Affiant knows through the investigation by the Galveston County Organized Crime Task Force in February 2026 that all the above Game Rooms that paid a license and machine fees in October 2025-present are engaged in the criminal activity of illegal gambling (Texas Penal Code Chapter 47) under Texas Penal Code Chapter 71.02.

Through Affiant's interviews with Gelles and Baker, Affiant concluded that sufficient information exists that agents of the City of Hitchcock did not regularly conduct random ordinance code inspections of "Hitchcock Game Rooms" or enforce any ordinance code violation relating to "Hitchcock Amusement Ordinance", from the year 2022-to present day of warrant execution 02/18/2026.

Affiant concluded that Gelles, Baker or agents of the City of Hitchcock, showed knowledge that "Hitchcock Game Rooms" have operated illegally by engaging in the criminal activity of illegal gambling in prior criminal investigations, but displayed no evidence of conducting independent internal investigations or inquiries into the legitimacy of "Hitchcock Game Rooms" operating in the City of Hitchcock in accordance with their "Hitchcock Amusement Ordinance", from the year 2022- to present day of warrant execution 02/18/2026.

Baker and Gelles, subsequently provided Affiant with following pertinent documents listed below pursuant to the search warrant:

- Gambling paraphernalia as defined in Texas Penal Code Section 47.01 (6) Texas Penal Code Section 47.01 (4)(a) &(b)
- Any and all, whether physical or electronic/digital, notebooks, tickets, coupons, manuals and operational literature, including contracts, and agreements.
- Other business records, whether physical or electronic/digital, between distributors of the gambling devices, business partners, associates, employees, service and repair companies, customer lists, bank records, money transactions, and financial disclosures.
- Permitting applications, whether physical or electronic/digital, all licensing documentation related to amusement businesses, criminal background checks of all amusement business applications, banking information of the City of Hitchcock related to fees paid by permit applicants, bills and notes.
- Any documents, whether physical or electronic/digital, pertaining to the City of Hitchcock business as it relates to permitting of amusement places, monies in any safe at the suspected place and any monies located in the suspected place on any person(s) in care, custody or control of the suspected place related to permitting fees for the amusement business.

- Computers, computer records, hard drives, and/or server/cloud storage pertaining to the City of Hitchcock's business permitting, surveillance equipment, cameras, and DVD recordings.
- Any and all inspection reports, whether physical or electronic/digital, for suspected business/addresses listed below.
- Any and all records, communications, and document tracking related to the blow listed addresses.
- Amusement Permits issued by the City of Hitchcock to the "Game Room" business owners
- License Applications of the "Game Room"
- Inspection Records of the "Game Room"
- Any and all documents related to Hitchcock Texas Code of Ordinances Title XI – Business Regulations, Chapter 112 Amusements
- Bank records and/or documents and/or US Currency related to the fees collected under Hitchcock Texas Code of Ordinances Title XI – Business Regulations, Chapter 112 Amusements

These documents were seized, by Affiant from Hitchcock City Hall, 8102 Highway 6, Hitchcock, Galveston County, Texas, 77563, both physically and electronically, in reference to Amusement licensing and permitting, under "Hitchcock Amusement Ordinance", and the established, "Game Rooms", or," Video Gaming Industry Establishments," or," Businesses with five machines or less," relating to the locations of "Hitchcock Game Rooms."

Concluding Affiant's execution of the search warrant at Hitchcock City Hall, 8102 Highway 6, Hitchcock, Galveston County, Texas, Affiant was advised by members of the Galveston County Organized Crime Task Force, and Detective B. Pearcy, that search and arrest warrants were executed on, or about, February 18, 2026, and confirmed "Hitchcock Game Rooms" were operating, and or participating, in keeping machines described as video gaming devices, otherwise known as 8-liners/video draw poker devices, book making, illegal gambling, matching, or cash payout, and therefore possessing, or participating in, illegal gambling device as described by Texas Penal Code Sec. 47.01, and considered unlawful in Texas Penal Code Sec. 47.06. Affiant was informed by Det. B. Pearcy and members of the Galveston County Sheriff's Office Organized Crime Task Force that Possession of Gambling Devices, Equipment, or Paraphernalia, were located at all the "Hitchcock Game Rooms."

Sufficient information and evidence were established by Affiant, and members of the Galveston County Organized Crime Task Force, to conclude that the City of Hitchcock, and agents of the City of Hitchcock, acquired revenue and or fees, from "Hitchcock Game Rooms" to allow them to continue to operate and engage in illegal activity of gambling.

In the month of March 2026, Affiant was provided legal compliance evidence, by Sergeant S. Fasolino, by return of a Grand Jury Subpoena, drafted and issued, out of the 10th District Court, Galveston County, Texas, for the custodian of records to produce any and all records for the account holder," City of Hitchcock," by Prosperity Bank, 8300 Highway 6, Hitchcock, Galveston County, Texas, 77563. Affiant reviewed the documents obtained in the subpoena return from Prosperity Bank located the following described documents and evidence:

1. Signature card, application for new account, corporate resolutions and authorizations, or partnership/proprietorship business name certificates (as applicable) for all accounts held by the above listed individual(s) and/or business.
2. Bank statements for all accounts held by above listed individual(s) and/or business for January 2018 to present.
3. Legible copies (front and back) of deposit tickets and deposited items for all deposits to all accounts for January 2018 to present.
4. Legible copies (front and back) of all withdrawals from ALL accounts listed above in the amount of $100.00 or greater during January 2018 present.

11

5. Legible copies (front and back) of cashier's checks, bank money orders, certificate of deposit, wire transfers-out (including wire transfer instructions), and similar financial instruments which were purchased with the withdrawals noted in Item 4 above.

6. Safe Deposit Box Records: Including contracts, access records, and records of rental fees paid disclosing the date, amount, and method of payment (cash or check).

Affiant further observed the Prosperity Bank subpoena return to indicate the following account numbers were associated with the "City of Hitchcock":

- **3264101**, 8622741, 8622821, 220003123, 220003255, 220003360, 222690783, 222690791, 222690864

Affiant observed in the provided legal compliance return, authorized signatories and agents of the account were named as, Chris Armacost-Mayor, Marie Gelles-City Manager, Mary Combs Demby, Mayor Pro-Tem, Debbie Nesbitt-City Secretary, Monio Mark-Finance Director, as of November 2025.

Affiant observed in the Prosperity Bank subpoena return, various transactions for deposits to the "City of Hitchcock Operating Account: 3264101" ranging from five to six figure transactions. Affiant knows from statements made by Baker, and on Affiant's review of the City of Hitchcock Amusement licensing and permitting funds for "Hitchcock Game Rooms" are collected at the beginning of the fiscal year, or the month of October.

Affiant further reviewed the Prosperity Bank records listed #3264101 dep sets 2025xx410, 3264101, and "Hitchcock Game Room's" respective documents/transaction records seized by Affiant from Hitchcock City Hall. Affiant was able to correlate the following payments made to the City of Hitchcock by "Hitchcock Game Rooms" to the Prosperity Bank subpoena records, confirming the funds were being transferred into the City of Hitchcock General Fund:3264101:

1. 10/1/2025 - $93,400.00 – Gulam Khan – Purple Room - 9110 HWY 6, Hitchcock, TX.
2. 10/2/2025 - $53,100.00 – Khai Bui/Lucky 7 Diamonds- 7515 FM 2004, Hitchcock, TX.
3. 10/14/2025 - $85,600.00 – Cheryl Smith – 10135 HWY 6, Santa Fe, TX.
4. 10/15/2025 - $500.00 – Tajdin Ali – Prime Mart – 7727 HWY 6, Hitchcock, TX.
5. 10/21/2025 - $12,800.00 – Jubilee Mardi Gras – 8425 HWY 6, Hitchcock, TX.
6. 12/29/2025 - $57,200.00 - Jubilee Mardi Gras – 8425 HWY 6, Hitchcock, TX.
7. 10/23/2025 - $75,200.00 – Peggy Gosman - Jungle – 8709 HWY 6, Hitchcock, TX.
8. 10/27/2025 - $98,600.00 – Roxana Rendon – Lucky Ducky– 11035 HWY 6, Hitchcock, TX.
9. 10/28/2025 - 105,100.00 – Bayou Restaurant Group - Numbers – 6121 HWY 6 A, Hitchcock, TX.
10. 10/30/2025 - $93,400.00 – Jisan Makanojiya – Jokers Gone Wild – 8219 Wallace St, Hitchcock, TX.
11. 12/4/2025 - $71,250.00 – Malasha Teixira / Spooky Spins – 8513 HWY 6, Hitchcock, TX.
12. 10/27/2025- $86,900.00 – Cirem Dicar LLC / RP VENDING - 7902 HWY 6, Hitchcock, TX.
13. 02/06/2026 - $26,000.00 – Wild 7's – 7202 HWY 6, Hitchcock, TX.

Affiant concluded after review of the Prosperity Bank subpoena records, net monies procured in the month of October 2025 were $2,231,026.64, and Affiant established net monies were deposited to City of Hitchcock Operating Account: 113122655-3264101. Affiant learned that of those net monies procured in the month of October 2025 - day of warrant execution February 2026, $859,050.00, was documented as revenue, or monies deposited relating to Amusement Permit (Game Room & Machine Fees)/ G/L Account: 101-4-0002010.

Affiant established sufficient information and evidence to support that the $859,050.00 net monies deposited by the City of Hitchcock for fiscal year 2025-2026, were collected from the various, "Game Rooms", or," Video Gaming Industry Establishments," or," Businesses with five machines or less," from "Hitchcock Game Rooms;"

which were found to be operating illegally, and all monies procured by the City of Hitchcock, or agents of the City of Hitchcock, from the above listed locations established as "Hitchcock Game Rooms," are considered contraband that was used in, intended to be used in, is illegal proceeds of, was acquired with illegal proceeds of engaging in organized criminal activity, money laundering, the possession of which is prohibited by law, namely money that is subject to forfeiture under Chapter 59 of the Texas Code of Criminal Procedure..

Affiant has sufficient probable cause to believe these proceeds are contraband and were collected primarily in the month of October 2025, given application and permit fees were scheduled for collection from City of Hitchcock for Game Room license renewal, under Amusement licensing and permitting from the "Hitchcock Game Rooms," as indicated in the enclosed spreadsheet excerpt. See also Attachment B.

Affiant knows the City of Hitchcock is requiring machine and license fees to be collected from Hitchcock Game Rooms, in order for Hitchcock Game Rooms to operate within the City of Hitchcock, specifically for the fiscal year 2026 (October 2025-2026). Affiant knows that in February 2026 the Galveston County Sheriff's Office conducted an operation on illegal gambling in Hitchcock, Texas that found twenty Game Rooms were all operating illegally in violation of Texas Penal Code Chapter 47; therefore, the City of Hitchcock and the Hitchcock Game Rooms were working in combination in the commission of the following offenses; keeping of a gambling place, gambling promotion, and  possession of gambling paraphernalia, money laundering, and organized criminal activity a direct violation of the Texas Penal Code Chapters 47, 34 & 71.

Furthermore, Affiant knows through my training and experience that the City of Hitchcock is using the Prosperity bank account(s) to store contraband paid by and/or earned at the "Hitchcock Game Rooms" and the City of Hitchcock is intermingling the illegal funds into multiple accounts. Based on this information, it is Affiant's belief that the money located in these bank accounts, City of Hitchcock General Fund:3264101, that The City of Hitchcock is a controlling party thereof and transferring funds between accounts that contain illegal contraband are directly related to illegal gambling pursuant to Texas Penal Code Chapter 47, money laundering pursuant to Texas Penal Code Chapter 34, and engaging in organized criminal activity pursuant to Texas Penal Code Chapter 71. Based on Affiant's training and law enforcement experience and Affiants participation in this investigation, I conclude that, more likely than not, the City of Hitchcock is a willful participant or benefits from money laundering in violation of the Texas Penal Code Chapter 34 while engaging in organized criminal activity in violation of Texas Penal Code Chapter 71.02.

Based on Affiant's knowledge, training, and experience as a peace officer, and Affiant's investigation, it's Affiants professional judgment that, more likely than not, the funds in the Prosperity Bank 3264101 is substantially connected to one or more felony violations of Money Laundering in violation of the Texas Penal Code Chapter 34 and Engaging in Organized Criminal Activity in violation of Texas Penal Code Chapter 71.02 (illegal gambling) in that the above listed bank account the funds were used in, intended to be used in, is proceeds of, or was acquired with proceeds of illegal gambling.

Due to the fact that these proceeds described are gained from an illegal activity, Engaging in Organized Criminal Activity in violation of Texas Penal Code Chapter 71.02 (illegal gambling under Texas Penal Code Chapter 47), while additionally the acquisition, concealment, and possession of these funds subsequently constitutes an offense of Money Laundering under Texas Penal Code 34.02. Furthermore, Affiant believes the money described therein, was acquired by the City of Hitchcock by requiring the operators of illegal gambling establishment to pay for validation decals, application permit fees, assessed late fees.

Affiant further concludes that money located in the account belonging to City of Hitchcock contains contraband and/or illicit proceeds of Organized Crime and Money Laundering and are subject for forfeiture under Chapter 59 of the Texas Code of Criminal Procedure.

Affiant believes this information to be true and correct and asks the Court for the issuance of this search and seizure warrant.

**WHEREFORE**, premises considered, your Affiant respectfully requests a warrant be issued authorizing any peace officer of Galveston County or any peace officer of the State of Texas, to enter the aforesaid business location known as Prosperity Bank located at 8300 Highway 6, Hitchcock, Galveston County, Texas, 77563, with the authority to search for and seize the Prosperity Bank General Fund:3264101 described in this Affidavit as contraband under Texas Code of Criminal Procedure Chapter 59.

**WHEREFORE**, Affiant requests for issuance of a warrant that will authorize him to search said place or premise for said items and seize the same.

_____
Affiant

Sworn and subscribed to before me by said Affiant on this the 23rd day of June , 2026.

_____
Printed Name

DISTRICT JUDGE, GALVESTON COUNTY, TEXAS
District Court

_____
Signature

DISTRICT JUDGE, GALVESTON COUNTY, TEXAS
District Court

14

## SEARCH & SEIZURE WARRANT

**THE STATE OF TEXAS and COUNTY OF GALVESTON** to the Sheriff or any Peace Officer of Galveston County, Texas, or any Peace Officer of the State of Texas,

**WHEREAS**, the Affiant, Sergeant M. Stephenson, whose signature is affixed to the Affidavit is a Peace Officer under the laws of Texas and did heretofore this day subscribe and swear to said Affidavit before me (which said affidavit is by this reference incorporated herein for all purposes), and whereas I find that the verified facts stated by Affiant in said Affidavit shows that Affiant has probable cause for the belief he expresses therein and establishes the existence of proper grounds for the issuance of this warrant.

**NOW, THEREFORE, you are commanded to enter and search**: The business known as Prosperity Bank, located at 8300 Highway 6, Hitchcock, Galveston County, Texas, 77563, a multi-story, brown in color, brick construction commercial business. The front doors of the business face to the southwest and above the front doors, are permanently affixed signage, "Prosperity Bank," directly onto the building with large blue font. The front entrance is comprised of glass doors, and the front of the business is constructed with large glass windows. The business is located on the north side of State Highway 6. Depicted below, is an image of Prosperity Bank, located at 8300 Highway 6, Hitchcock, Galveston County, Texas, 77563, captured by Affiant:



At said place you shall search for and, if same be found, seize and bring before me, the property described in the affidavit, or amount of funds in the amount of $859,050.00 or any amount of deposit up to but no exceeding $859,050.00 named in the affidavit, to-wit said items to be seized, and taken into custody include:

**Prosperity Bank General Fund:3264101, located at 8300 Highway 6, Hitchcock, Galveston County, Texas, 77563.**

- b) Pursuant to Texas Code of Criminal Procedure Article 59.12, the regulated financial institution upon which this warrant is served may either:

  - a. Above bank account(s) The City of Hitchcock is the controlling party of account(s) that contain illegal funds, account numbers, and said currency, shall be seized as a cashier's check, certified check, or money order in the amount of $859,050.00, payable to: KENNETH CUSICK, GALVESTON COUNTY CRIMINAL DISTRICT ATTORNEY;

OR:

GCSO Case No. 26-00000821

b. Pursuant to Texas Code of Criminal Procedure Article 59.12, the regulated financial institution upon which this warrant is served may either:

1) Pay an account, or tender assets held, as security for an obligation owed to the institution at the time of the service of the seizure warrant; or

2) Transfer the depository account or assets to a segregated interest-bearing account in the name of KENNETH CUSICK, GALVESTON COUNTY CRIMINAL DISTRICT ATTORNEY, GALVESTON COUNTY, AS TRUSTEE, to remain in the account until the time has expired for an appeal from a decision of the court relating to the forfeiture of accounts or assets under Article 59.05 of the Texas Code of Criminal Procedure.

and any person(s) whose name, identities, and physical description are unknown to Affiant, are a controlling party and transferring funds between accounts that contain funds.

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS.

**HEREIN FAIL NOT**, but due make return of this warrant within three days, exclusive of the day of its execution, with your return thereon, showing how you have executed the same.

ISSUED at 9:18 o'clock A. M. on this the 23rd day of June 2026, to certify which witness my hand this day.

Rebecca Millo

Printed Name

DISTRICT JUDGE, GALVESTON COUNTY, TEXAS
10th District Court

Signature

DISTRICT JUDGE, GALVESTON COUNTY, TEXAS
10th District Court

16

# ATTACHMENT A

### Sec. 112.01. Reserved.

### Sec. 112.02. Statement of city policy.

*The rules contained herein are promulgated by the City of Hitchcock in order to facilitate implementation of the Video Game Devices Ordinance, to achieve the effective regulation of the video gaming industry, and to maintain the health, welfare, and safety of the public. These considerations shall control the application and interpretation of the rules. Any subsequent restatement, repeal, or amendment of these rules shall be in accordance with the aforementioned considerations.*

*(Ord. No. 2010-908A, 8-9-10)*

### Sec. 112.03. Definitions.

*The provisions of the City of Hitchcock Video Gaming Devices Ordinance relating to the definitions of words, terms, and phrases are hereby incorporated by reference and made a part hereof, and shall apply and govern the interpretation of these regulations, except as otherwise specifically declared or as is clearly apparent from the context of the regulations herein. The following words, terms, and phrases shall have the ascribed meaning indicated below.*

*Agent. Any designated agent of the City of Hitchcock.*

*Applicant. The person who has completed and application to the city for a license or permit to participate in the video gaming industry in City of Hitchcock.*

*Application. The process by which a person requests license or permit, or the renewal of a license or permit, for the participation in the video gaming industry in the City of Hitchcock.*

*Designated Representative. An employee designated by the licensee to oversee and assume responsibility for the operation of the licensed establishment.*

*Device. A video gaming device which complies with the rules of the city and the Ordinance.*

*Facility. The premises of a business which is licensed to house or offer for play video gaming devices within this city.*

*Inspection. The observation or examination by any agent of the city of any premises of the licensee or applicant where video gaming devices stored, possessed, or offered for play, or connected to video gaming in any way.*

*Licensee. Any applicant or person who is granted a license by the city permitting video gaming activities that are authorized by the Ordinance. The authorized activity of all licensees shall be limited to the type of license issued to each.*

*Minors. Every natural person under the age of 18 years.*

*Mixed Patronage. A clientele which includes both minors and adults.*

*Offense. Any violation of the Ordinance or these rules or any other criminal conduct.*

*Permittee.* For purposes of these rules, shall have the same meaning as "video gaming employee" as provided in § 112.05(B).

*Premises.* Land, together with all buildings, improvements, equipment, and personal property located thereon which is controlled by an applicant or a licensee, and associated with video gaming activities authorized by the Ordinance.

*Resident.* Any natural person who is domiciled in the state or who demonstrates that he/she maintains a permanent place of abode within the state, and who has resided and/or been domiciled in the state of Texas for a period of two years prior to the date of his application for a license.

*Security Interest Holder.* Any person who loans money for the purpose of financing devices, and uses the devices as collateral. This shall also include a lesser of devices.

*Ticket Voucher.* A ticket which is printed by a video gaming device by use of a payer-activated switch providing the player with a printed record of credits owed.

*Validation Decal.* The decal furnished by the city and placed on a device indicating that the device meets the criteria established by the city, and that the particular device has been enrolled by the city.

*Video Gaming Devices.* For purposes of these rules, shall have the same meaning as video draw poker devices.

*Written Reprimand.* A written notification from the city to a licensee which outlines any violation of these rules.

(Ord. No. 2010-908A, 8-9-10)

### Sec. 112.04. Application and license.

(A)     Initial and renewal applications.

(1)     All applications for a license shall be submitted on forms provided by the city and mailed to an address provided by the city.

(2)     An application is not complete nor is it considered filed with the city unless it is submitted with the appropriate fee, is signed by the applicant, and contains all information required by the city.

(3)     All applicants for a license shall comply with the disclosure provisions. In addition, all applicants shall be required to disclose any violation of any administrative regulation from any jurisdiction.

(4)     All applications, except for a manufacturer's application, shall include an accurate sketch of the interior of the facility, and the proposed location of all video gaming devices to be located therein. In addition, the sketch shall include all grounds and parking areas.

(5)     All applications shall include the name of the owner(s) of the premises on which the establishment is located.

(6)     All renewal applications shall be submitted in complete form.

(7)     All applicants shall provide all additional information requested by the city. If applicants fail to provide all additional information requested by the city, the application shall be considered incomplete.

(8)     All applications are to contain a properly notarized oath wherein the applicant states that:

(a)     The information contained therein is true and correct;

(b)     The applicant has read the Ordinance and these rules, and any other informational materials supplied by the city that pertain to video gaming; and

(c)     The applicant agrees to comply with these rules and the Ordinance.

(9)     All applications shall contain a telephone number and permanent mailing address for receipt of correspondence and service of documents by the city.

(10)    Incomplete applications, including failure to pay fees may result in a delay or denial of a license.

(11)    The applicant shall notify the city in writing of all changes of address, phone numbers, personnel, and other required information in the application within 10 business days of the effective date of the change.

(12)    An application shall be denied if an applicant has been convicted in any jurisdiction for any of the following offenses within the ten years prior to the date of the application. And at least ten years has not elapsed between the date of application and the successful completion of any service of a sentence, deferred adjudication, or period of probation or parole for any of the following:

(a)     Any offense punishable by imprisonment for more than one year;

(b)     Theft or any crime involving false statements or declaration; or

(c)     Gambling as defined by the laws or ordinances of any municipality, county, or state, the United States, or any similar offense in any other jurisdiction.

(13)    Any false statement, including improperly notarized documents, in any report, disclosure, application, permit form, or any other document required shall be a violation of these rules and the Ordinance.

(B)     Requirements for licensing.

(1)     No person shall be granted a license, and no license shall be renewed unless the applicant demonstrates to the city that he/she is suitable for licensing, and thereafter continues to maintain suitability, as provided.

(2)     Once a video gaming license has been issued by the city, the license shall be conspicuously displayed by the licensee in his place of business so that it can be easily seen and read by the public.

(3)     If a licensee fails to file a complete renewal application on or before 45 days prior to the license expiration date, the city may assess a civil penalty of $250.00 for the first violation, $500.00 for the second violation and $1,000.00 for the third violation.

(4)     The appropriate annual fee shall be paid by all licensees regardless of the expiration date of the license on or before October 15 of each year.

(5)     All nonrefundable fees required for application/renewal and any administrative fines or penalties shall be made payable to the City of Hitchcock and remitted to an address provided by the city.

(6)     Upon discovery, hidden ownership, whether by counter letter or other device or agreement, whether oral or written, shall constitute grounds for immediate suspension, revocation or denial of a license or application. Therefore, if there is more than one owner, applicants and licensees shall disclose full ownership of a company so that the aggregate of percentages of individual ownership total 100 percent, regardless of the percentage of individual ownership.

(7)     All licensees shall maintain compliance with all applicable federal/state/local gambling laws and requirements.

(8)     All licensees shall continue to operate the business described in the application during the term of the license. In the event either the business or the video gaming devices at the location are not in operation for a period of 30 consecutive calendar days during which the business would normally operate, the licensee and device owner shall immediately notify the city of such fact and the licensee shall immediately surrender its license to the city.

(9)     If surrendered in accordance with the above provision no gaming activities may be conducted at the premises unless and until the license is returned to the licensee.

(10)    The license may be returned to the licensee when business operations are resumed for the unexpired term and is not under suspension and further provided that no more than 180 days has elapsed from the date the license was surrendered.

(11)    Licenses surrendered in accordance shall not be subject to renewal unless the license has been returned to the licensee.

(12)    Failure to surrender the license as provided shall constitute grounds for revocation or suspension of the license.

(C)     Change of ownership of licensed establishment/New owner of an existing establishment.

(1)     If a change in ownership of a licensed establishment occurs, the city shall be notified, in writing within five days of the act of sale or transfer and shall pay all costs associated with the change of ownership.

(2)     The devices shall only be allowed to continue in operation under the old license until:

(a)     The issuance of a video gaming license in the name of the new owner;

(b)     A determination by the city that the new applicant is unsuitable;

(c)     Denial of the new license application; or

(d)     The passage of 180 days from submission of the application to the city.

(3)     If any of the documents required by this section are not submitted with the new owner's application, the city may immediately disable the devices.

(4)     If the 180-day period has elapsed prior to the issuance of a new video gaming license, the devices shall be disabled and the device owner shall immediately make arrangements to remove and transfer the devices from the formerly licensed establishment.

(5)     Upon the issuance of a license to a new owner or the passage of 180 days, whichever occurs first, the license issued to the prior owner shall expire and be surrendered to the city.

(6)     The new owner of the establishment shall submit a new video gaming permit application, a layout of the building and gaming devices, a device inventory log, proof of new ownership, and shall pay the license establishment fee and fees per machine in entirety at the time of the purchase of the establishment. There is no pro-rating of fees. The new owner shall pay the fees when taking possession and again at the time of renewal in October. This action must take place within five days of taking ownership. The licensing and amusement fees shall be found on the comprehensive fee schedule approved by City Council. All fees shall be non-refundable.

(Ord. No. 2022-021, § 1, 10-24-22)

### Sec. 112.05. Operation of video gaming devices.

(A)     Responsibilities of licensees.

(1)     (1) The licensee or a designated representative of the licensed establishment shall be required to be physically present and available within the licensed establishment at all times during all hours of operation; shall ensure that the devices are not tampered with, abused, or altered in any way; and shall prevent the play of video gaming devices by persons under the age of 21 and prevent access to the gaming area by persons under the age of 18. The penalty for violating of this chapter may result in an issuance of a fine of up to $1,000.00 per occurrence.

(2)     Licensees and employees of a licensee shall not loan money, extend credit, or provide any financial assistance to patrons for use in video gaming activities.

(3)     Licensees and employees of a licensee shall not permit any person who appears to be intoxicated to participate in the play of the video devices.

(4)     All licensees shall supervise all employees to ensure compliance with the laws and regulations relating to the operation of video gaming devices.

(5)     All licensees shall be responsible for the proper placement and installment of devices within a licensed establishment as prescribed by the rules.

(6)     Licensees shall not advertise or participate in any promotion or scheme which is contingent upon the play of a video gaming device and which results in an enhanced payoff other than that set by the internal mechanism of the video gaming device Ordinance.

(7)     All licensees shall post signs on the premises of a licensed establishment, which admits mixed patronage that restricts the play of video gaming devices by persons under the age of 21 and restricts the access to areas where gaming is conducted by persons under the age of 18. The signs shall be placed at the entrances to device areas with lettering at least three inches in height stating that there are gaming devices inside, no one under 18 allowed in gaming area, and no one under the age of 21 allowed to play gaming devices.

(B)     Video gaming employees and permits.

(1)    The city shall issue a video gaming employees permit to persons determined to be suitable pursuant to the provisions of the Ordinance and rules adopted by the City of Hitchcock.

(2)    All video gaming employees shall possess and wear on the person a valid video gaming employee permit. The penalty after the third offense shall be administrative action, including, but not limited to, suspension or revocation of the permit.

(3)    All video gaming employee applications must be submitted on forms prescribed by the city.

a.    All applications shall be submitted to the City of Hitchcock.

b.    All applications shall contain a telephone number and permanent address for receipt of correspondence and service of documents by the city.

c.    All video gaming employees shall submit a renewal application to the city at least 60 days prior to expiration of their permit to avoid a lapse in their ability to work as video gaming employees.

(4)    All applicants shall provide all additional information requested by the city. If applicants fail to provide all additional information requested by the city, the application shall be denied.

(5)    All video gaming employees or applicants shall notify the city in writing of all changes of address, phone numbers, and other required information in the application within 30 calendar days of the effective date of the change.

(6)    No person shall be granted a permit and no permit will be renewed unless the applicant demonstrates to the city that he/she is suitable for permitting and thereafter continues to maintain suitability.

(7)    All video gaming employees shall have knowledge of these rules and the provisions of the Ordinance.

(Ord. No. 2010-908A, 8-9-10; Ord. No. 2022-021, § 1, 10-24-22)

### Sec. 112.06. License and operation fees.

(A)    License fees.

(1)    Upon application, a nonrefundable annual fee shall be paid by each applicant/licensed establishment. This provision does not apply to current licensed establishments until renewal of their licenses. The licensing and amusement fees shall be found on the comprehensive fee schedule adopted by City Council.

(2)    All appropriate license fees shall accompany the initial/renewal application.

(3)    All licensees shall pay their license fee(s) for the year in a single payment.

(4)    All licensees shall be paid by cash, personal, company, certified, or cashier's check, money order, or electronic funds transfer. If a personal or company check is returned, the applicant's license shall not be issued and additional fees shall be assessed to cover the bank fees for insufficient funds.

(B)    *Device operation fees. A nonrefundable annual device operation fee per device shall be paid by the device owner establishment for each video gaming device placed at a licensed establishment. In the event a video gaming device needs to be replaced, the device operation fee must be paid again for the new machine. The licensing and amusement fees shall be found on the comprehensive fee schedule adopted by City Council.*

(C)    *An annual criminal background check for each employee shall be conducted. A background check for all employees of currently licensed establishments shall be requested by each employee within 30 days from the effective date hereof. The fee for the background check is located on the comprehensive fee schedule adopted by City Council.*

(D)    *Any licensed establishment that displays signage on the outside of the premises will be limited to the name of the establishment on the front or side of the building. The words "game room" are not to be used.*

(E)    *A maximum of eight establishments will be issued licenses.*

*(Ord. No. 2010-908A, 8-9-10; Ord. No. 2012-937, 8-20-12; Ord. No. 2017-987, 9-18-17; Ord. No. 2018-995, 7-16-18; Ord. No. 2022-021, § 1, 10-24-22)*

### Sec. 112.07. Device regulations.

(A)    *Device specifications.*

(1)    *All devices shall include the following specifications and features:*

a.    *Accept only United States coins and/or currency;*

b.    *The phrase "NO PERSON UNDER THE AGE OF 21 ALLOWED TO PLAY" shall be conspicuously displayed on the face of all devices;*

c.    *Permanent serial numbers not to exceed nine alpha and/or numeric characters. The serial number plate shall be located in the upper (front) right side panel of the device and shall contain the serial number of the device.*

(B)    *Damage to or theft from devices.*

(1)    *Upon discovery of damage to or theft from a video gaming device, the device owner, licensed establishment owner, or a designate representative of the licensed establishment shall request the local law enforcement agency to investigate.*

(2)    *The device owner or licensed establishment owner shall immediately notify the Hitchcock Police Department, in writing of any damage to or theft from a device.*

(C)    *Devices permanently removed from service.*

(1)    *When a device is permanently removed from service by a licensed device owner, the validation decal shall be removed by that device owner and shall be returned to the city with the completed device transfer report provided by the city.*

(2)    *No devices, which are permanently removed from service, shall have a validation decal displayed on it.*

(3)    *For purposes of this section, devices permanently removed from service shall mean devices:*

a.    That are sold back or otherwise returned, and shipped to the distributor or manufacturer;

b.    That are damaged beyond repair due to theft, vandalism, or natural disasters; or

c.    That are completely dismantled for parts or destroyed and properly discarded as waste.

(D)    Disabling or seizure of devices. The city shall have the authority to disable and/or seize any device at any location when a violation of the Ordinance occurs, in accordance with the procedure provided therein.

(E)    Requirements for licensed establishments.

(1)    No licensed establishment shall be altered, renovated, or expanded if such alteration, renovation, or expansion is for the purpose of moving devices or installing addition devices, without first submitting to the city for approval, a written notification, via delivery by the United States Postal Service certified or registered mail, return receipt requested or a private or commercial interstate carrier, of the intent and a set of plans illustrating the projected changes.

(2)    Any licensed establishments that allow mixed patronage, shall have devices for play and operation only in designated areas. These gaming areas shall be physically separated by a partition. The partition shall be permanently affixed and solid except for an opening to allow for player access into the gaming area.

(3)    A licensed establishment which is connected by a doorway or other opening to any other business establishment whether or not such other establishment is eligible for licensing by the city shall:

a.    Have a door or doors between the licensed establishment and the other entity which shall automatically close;

b.    Have a separate outside entrance for patrons such that an individual patron may enter each establishment from the exterior of the building;

c.    Keep business records and books that are separate from those of the other entity; and

d.    Have personnel who work solely for the licensed establishment and not for the other entity during all hours of operation of the licensed establishment.

(4)    Required distance from churches, schools and educational institutions.

a.    The location of any video gaming establishment other than establishments in operation at the final passage of this chapter, is hereby prohibited where the place of business is within 300 feet of any church, public hospital, school, public parks, healthcare facility, historical marker, or other educational institution in the city.

b.    The measurement of the distance between the place of business where the video gaming devices are located and the church or public hospital shall be along the property lines and in a direct line across intersections.

(5)    It shall be unlawful for any person to possess, consume, or otherwise bring any alcoholic beverage in or upon any premises licensed as a gaming device location by the City of Hitchcock.

(6)    It shall be unlawful for any permittee, licensee, or employee thereof to allow any person to possess, consume, or otherwise bring any alcoholic beverage in or upon any premises licensed as a gaming device location by the City of Hitchcock

(7)    The exception to this prohibition by the section would not be applicable to premises licensed in accordance with the provisions of V.T.C.A., Alcoholic Beverage Code and the Alcoholic Beverage Code of the City of Hitchcock.

(Ord. No. 2010-908A, 8-9-10)

### Sec. 112.08. Code of conduct of licensees and permittees.

(A)    General provisions.

(1)    All licensees and permittees shall comply with all applicable federal, state and local laws and regulations.

(2)    All licensees and permittees shall, at all times, conduct themselves in a professional manner when communicating with the public, the city and the board

(3)    Any violation of the provisions of the Ordinance, shall also constitute a violation of these rules.

(B)    Unsuitable conduct.

(1)    No licensee or permittee shall engage in unsuitable conduct or practices or shall employ or have a business association with any person, natural or juridical, which engages in unsuitable conduct or practices.

(2)    For purposes of this section, unsuitable conduct or practices shall include, but not be limited to the following:

a.    Employment of, association with, or participation in any enterprise or business with a documented or identifiable organized crime group or recognized organized crime figure;

b.    Misrepresentation of any material fact or information to the city or board;

c.    Obstructing or impeding the lawful activities of the city or its agents;

d.    Engaging in, furtherance of, or profit from any illegal activity or practice, or any violation of these rules or the Ordinance;

e.    Persistent or repeated failure to pay amounts due or to be remitted to the city; and

f.    A licensee or permittee shall not engage in. participate in, or facilitate by any means, any criminal activity.

(3)    Any person required to be found suitable or approved in connection with the granting of any license or permit shall have a continuing duty to notify the city of his/her/its arrest, summons, citation or charge for any criminal offense or violation including DWI.; however, minor traffic violations need not be included. All licenses and permittees shall have a continuing duty to notify the city of any fact, event, occurrence, matter or action that may affect the conduct of gaming or the business and financial arrangements incidental thereto or the ability to conduct the activities for which the licensee or permittee is licensed or permitted. Such notification shall be made within 30 calendar days of the arrest, summons, citation, charge, fact, event, occurrence, matter or action.

(4)    A licensee or permittee shall not intentionally make, cause to be made, or aid, assist, or procure another to make any false statement in any report disclosure, application, permit form, or any other document, including improperly notarized documents, required by these rules or the Ordinance.

(C)    Additional causes for disciplinary action.

(1)    Further instances of conduct by a licensee or permittee where the city may sanction a licensee or permittee shall include but not be limited to when:

a.    The licensee or permittee has been involved in the diversion of gaming equipment for unlawful means;

b.    The licensee or permittee or a designated representative of the licensee or permittee has been involved in activities otherwise prohibited by law or the willful purpose of which was to circumvent or contravene the provisions set forth in the city's rules;

c.    The licensee or permittee has demonstrated a reluctance or inability or to comply with the requirements set forth in these rules and the Ordinance, particularly after repeated warnings;

d.    The licensee or permittee violates written conditions;

e.    The city discovers incomplete or erroneous information as to a material or a substantial matter provided on an application or any item affecting the decision whether to license the applicant;

f.    The city discovers substantial, incomplete, or erroneous information provided in a report or other required communication; and

g.    The licensee or permittee has failed to timely pay a fine imposed by the city;

h.    Unavailability of the licensees or permittee, their designated representatives, or any agents of the licensee.

(Ord. No. 2010-908A, 8-9-10)

### Sec. 112.09. Investigations.

(a)    Background investigations.

(1)    All applicants shall be subject to a background investigation in order to ensure that licensing requirements are met.

(2)    All applicants shall, upon request, make available to the city, records and documentation to substantiate statements and support information supplied in the application process.

(b)    Inspections of facilities.

(1)    During all hours of operation, any licensed premises upon which a licensee conducts any video gaming activity, shall be subject to inspection by the city without advance notice, in order to ensure compliance with the rules of the city and the provisions of the Ordinance.

(2)    Once an inspection commences, the licensee or a designated representative shall render full courtesy and cooperation to agents.

(3)      Upon completion of an inspection, agents may advise the licensee or a designated representative of any violation or problems which may exist.

(4)      Agents shall provide the licensee or a designated representative with a copy of an inspection report.

(c)      Inspection records.

(1)      Upon request, all licensees shall make available to the city, all required information and records, including, but not limited to licensed establishment documents including, but not limited to:

a.       Licensee contract concerning the licensed premises;

b.       Other video gaming related documents of this nature;

(2)      The city may require a licensee to submit any and all video gaming records or documents that are necessary for the facilitation and/or completion of an investigation pertaining to a violation of these rules or the Ordinance.

(d)      Inspection of devices.

(1)      Agents of the city may, at any time, without advance notice, inspect any device located within a licensed premises.

(2)      All devices shall have, at all times, the proper validation decal affixed to the device and maintain log books properly secured in the device and available for inspection by the city.

(3)      Agents of the city may disable and/r seize any device, which it finds to be in violation of any of these rules or the law.

(Ord. No. 2010-908A, 8-9-10)

### Sec. 112.10. Severability clause.

If any provision of these rules is declared invalid for any reason, the invalidity of that provision shall not affect the validity of the remain rules or any other provision thereof.

Any establishment which contains five or less devices as that term is defined in § 112.03 is exempt from the provisions of this chapter.

(Ord. No. 2010-908A, 8-9-10; Ord. No. 2011-921, 3-21-11)


### Sec. 112.11. Penalty.

Any person who violates any provision of this chapter for which no penalty is otherwise provided shall be subject to the penalty provided in § 112.99 in this chapter.

(Ord. No. 2010-908A, 8-9-10)

### Sec. 112.12. Application and requirements.

Require Applicant to complete an application and registration of video game devices as set forth in Attachments "A" and "B".

ATTACHMENT "A"

## LICENSETYPES1AND2
## (LOUNGE/BAR/TAVERN/RESTAURANT)

*Please submit the appropriate license fee with the New Application. Checks or money orders should be payable to: "City of Hitchcock". Cash will not be accepted.*

### The Applicant (business):

1. Application must be complete and notarized
2. Photograph of establishment (With address showing if possible)
3. Diagram of Establishment showing proposed location of video gaming devices
4. Articles of incorporation, Articles of Organization, Partnership Agreement (if applicable)
5. Release of All Claims
6. Request to Release Information
7. Affidavit of Full Disclosure
8. Copy of Property Lease Agreement (if applicable)

### Each person required to meet suitability must submit the following:

1. Personal History Questionnaire
2. Release of All Claims
3. Affidavit of Full Disclosure
4. Request to Release Information
5. 2 FBI Fingerprint cards

ATTACHMENT "B"

## LICENSETYPES3-8
## HOTEL/MOTEL/OTB/RACETRACK/TRUCKSTOP/DEVICEOWNER/SERVICE
## ENTITIY/DISTRIBUTOR)

1. Application must be complete and notarized
2. Photograph of establishment (with address showing if possible)
3. Diagram of Establishment showing proposed location of video gaming devices
4. Articles of Incorporation, Articles of Organization, Partnership Agreement (if applicable)
5. Release of All Claims
6. Request to Release Information
7. Affidavit of Full Disclosure
8. Zoning Certificate or Zoning Letter
9. Copy of Property Lease Agreement (if applicable)

*Each person required to meet suitability must submit the following:*

1. *Personal History Questionnaire*
2. *Personal Financial Questionnaire*
3. *Release of All Claims*
4. *Affidavit of Full Disclosure*
5. *Request to Release Information*
6. *2 FBI Fingerprint cards*

Affiant observed on the City's webpage, "cityofhitchcock.org", the fiscal year 2026 comprehensive fee schedule. The City of Hitchcock annual fee for amusement permits list;

- *License Establishment $5,000*                                        *Title   XI,   Ch.   112,   Sec.*
  *112.06(A)(1)*
- *Device Operation $1300.00/machine*                          *Title   XI,   Ch.   112,   Sec.*
  *112.06(B)*
- *Criminal Background Check /Badge $100/person*      *Title   XI,   Ch.   112,   Sec.*
  *112.06(B)*
- *Badge renewal late fee $5*
- *5 Devises or less $100.00/machine*                             *Not in Ord*
- *Machine Replacement Fee $108.33 p/month (Pro Rated)*   *Title   XI,   Ch.   112,   Sec.*
  *112.06(A)(1)*
- *Replacement Badge Fee $25*
- *Machine License Fee Late*
- *Charge $5.00 per machine per day*

# ATTACHMENT B

**Name:** Amusement Permit (Game Room & Machine Fees)
G/L Account: 101-4-0002010

30.00

| Fiscal Year | Amount | % change from Previous FY | Reasons for Change |
|---|---|---|---|
| 2009 | 73,376 | | |
| 2010 | 53,837 | -26.63% | |
| 2011 | 85,211 | 58.27% | |
| 2012 | 176,135 | 106.70% | |
| 2013 | 257,700 | 46.31% | |
| 2014 | 332,670 | 29.09% | |
| 2015 | 317,665 | -4.51% | |
| 2016 | 402,885 | 26.83% | |
| 2017 | 292,075 | -27.50% | |
| 2018 | 433,240 | 48.33% | |
| 2019 | 1,079,668 | 149.21% | |
| 2020 | 960,270 | -11.06% | |
| 2021 | 934,230 | -2.71% | |
| 2022 | 920,035 | -1.52% | |
| 2023 | 832,950 | -9.47% | Reduction in the number of Game Room Machines permitted due to Sheriff's raids |
| 2024 | 850,135 | 2.06% | |
| 2025 | 805,515 | -5.25% | Reduction in the number of Game Room Machines permitted due to raids |
| 2026 EST | 780,965 | -3.05% | Reduction in the number of Game Room Machines permitted. |

| Fiscal Year | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Totals | Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2009 | 4,400.00 | 5,900.00 | 8,800.00 | 1,500.00 | 11,300.00 | 4,300.00 | 6,200.00 | - | 10,400.00 | 4,300.00 | 4,100.00 | 12,175.54 | 73,375.54 | |
| 2010 | 8,000.00 | 17,900.00 | 9,337.38 | - | 500.00 | - | 6,600.00 | - | 2,400.00 | 6,500.00 | - | 2,600.00 | 53,837.38 | |
| 2011 | 5,500.00 | 32,700.00 | 15,552.00 | 500.00 | 14,552.35 | 365.00 | 5,100.00 | 865.02 | 5,043.00 | 500.00 | 100.00 | 4,433.60 | 85,210.97 | |
| 2012 | 92,700.00 | 5,500.00 | 21,100.00 | 12,200.00 | 13,405.00 | 1,240.00 | 760.00 | 915.00 | 7,800.00 | 6,900.00 | 13,300.00 | 315.00 | 176,135.00 | |
| 2013 | 185,050.00 | 21,455.00 | 390.00 | 17,845.00 | 26,800.00 | 200.00 | 3,600.00 | - | 1,260.00 | 800.00 | - | 300.00 | 257,700.00 | |
| 2014 | 225,050.00 | 57,800.00 | 3,820.00 | 335.00 | 290.00 | 24,175.00 | 19,600.00 | 500.00 | 200.00 | 200.00 | 600.00 | 100.00 | 332,670.00 | |
| 2015 | 205,500.00 | 22,325.00 | 500.00 | - | 29,765.00 | 5,900.00 | 41,800.00 | 560.00 | 745.00 | 1,800.00 | 8,420.00 | 350.00 | 317,665.00 | |
| 2016 | 243,600.00 | 24,475.00 | 1,260.00 | 31,235.00 | 45,805.00 | 69,600.00 | 1,100.00 | (17,920.00) | 1,000.00 | 100.00 | 2,400.00 | 230.00 | 402,885.00 | |
| 2017 | 283,900.00 | 1,010.00 | 855.00 | 735.00 | 375.00 | 600.00 | 3,300.00 | 300.00 | 600.00 | 300.00 | 100.00 | - | 292,075.00 | |
| 2018 | 311,575.00 | 1,060.00 | 75.00 | 6,885.00 | 3,445.00 | 36,400.00 | 1,800.00 | 17,800.00 | 27,500.00 | 26,500.00 | 200.00 | - | 433,240.00 | |
| 2019 | 731,660.00 | 25,663.00 | 18,440.00 | 12,385.00 | 13,300.00 | 159,760.00 | 8,600.00 | 104,260.00 | 1,700.00 | 300.00 | 200.00 | 3,400.00 | 1,079,668.00 | |
| 2020 | 743,745.00 | 89,590.00 | 460.00 | 300.00 | 116,800.00 | 300.00 | 75.00 | 100.00 | 100.00 | 1,600.00 | 200.00 | 7,000.00 | 960,270.00 | 951,270 |
| 2021 | 921,445.00 | 3,900.00 | 75.00 | 400.00 | 500.00 | 200.00 | 275.00 | 635.00 | 200.00 | 100.00 | 200.00 | 6,300.00 | 934,230.00 | 927,630 |
| 2022 | 900,450.00 | 2,775.00 | 6,100.00 | 2,855.00 | 100.00 | 660.00 | 90.00 | 645.00 | 460.00 | 300.00 | - | 5,600.00 | 920,035.00 | 914,533 |
| 2023 | 606,250.00 | 44,450.00 | 425.00 | 66,800.00 | 31,875.00 | 72,450.00 | 5,600.00 | 700.00 | 700.00 | 700.00 | 700.00 | 2,300.00 | 832,950.00 | 837,629 |
| 2024 | 790,900.00 | 49,750.00 | 210.00 | 545.00 | 710.00 | 900.00 | 105.00 | 310.00 | 500.00 | 200.00 | 300 | 5,705.00 | 850,135.00 | 847,630 |
| 2025 | 530,300.00 | 213,905.00 | 6,599.97 | 48,194.97 | - | 600 | 305 | 205 | 405 | 400 | 0 | 4,600.00 | 805,514.94 | 807,420 |
| 2026 EST | 709,500.00 | 12,930.00 | 57,715.00 | 715.00 | 105.00 | | | | | | | | 780,965.00 | 807,420 |

**PROSPERITY BANK**®

## Receipt

I, Sergeant Mitchell Stephenson, badge number __7749__ , received one (1) cashier's check on June 23, 2026, from Prosperity Bank, made payable to "Kenneth Cusick, Galveston County Criminal District Attorney," in the amount of $721,408.11, pursuant to the Search and Seizure Warrant; Case No. 26-00000821, State of Texas, County of Galveston, dated June 23, 2026, for the seizure of currency from the checking account ending in XXX4101 under the name of City of Hitchcock.

Sergeant Mitchell Stephenson
Galveston County Sheriff's Office

receiptSergeantreceiptSergeant